Filed 8/28/20  P. v. Burke CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>　　　　Plaintiff and Respondent,<br><br>v.<br><br>ANTHONY EDWARD BURKE,<br><br>　　　　Defendant and Appellant. | A157838<br><br><br>(Sonoma County<br>Super. Ct. No. SCR-696156) |

　　　　Anthony Edward Burke challenges the trial court's victim restitution award imposed after he pled no contest to two charges, including felony elder abuse through fraud (Pen. Code, § 368, subd. (d)).[1]  Burke contends a portion of the restitution award "was in excess of the victim's costs for reimbursement and repair," constituting an impermissible "windfall."

　　　　We disagree and affirm.

FACTUAL AND PROCEDURAL BACKGROUND

　　　　Edith R. hired Burke to repair the foundation at her Santa Rosa home. Burke told Edith he was a licensed and insured contractor with two engineering degrees and " 'a crew of sixteen.' "  Edith and Burke signed a

---

[1] Undesignated statutory references are to the Penal Code.

contract for the construction work, which called for a flat fee of $14,000 for the job. Edith paid Burke a deposit of $9,000. The work was estimated to be completed by the end of May 2016. Burke was not a licensed contractor. He did not obtain permits, and he stopped work on the property in June 2016. Edith reported Burke to the district attorney.

Burke plead no contest to felony elder abuse through fraud (§ 368, subd. (d)) and misdemeanor contracting without a license (Bus. & Prof. Code § 7028, subd. (a)). He admitted having suffered a prison prior (§ 667.5, subd. (b)). Pursuant to the plea agreement, the court imposed an aggregate four-year sentence.

## A.

At a conditional examination, Edith described the damage Burke caused to her property. Among other things, Burke dug an unnecessary trench in the yard, left a wall open, and installed the wrong type of pipes. When Burke stopped working, Edith's property was in "shambles, unfinished, and everything was . . . done wrong," "the cement had to be jackhammered out and the PVC pipes had . . . to be buried and everything had to be redone [¶] . . . [¶] from scratch."

Edith hired two workers, including her son, Michael, to fix Burke's work and repair the damage Burke caused. Michael cleaned up the area under the house; he also secured one of the walls, closed up a hole in that wall, and painted it. Michael also removed and replaced pipes Burke had installed incorrectly. Edith paid Michael $7,223 for the work based on an hourly rate of $28; she documented the time he spent working. Edith paid $7,122 for materials.

Edith paid another worker $4,800 to finish and repair the cement work. This expense was necessary because Burke had poured concrete against the

2

bottom of a wall, shifting the home's support beams.  When Burke stopped working on the property, there was cement " 'splattered' " everywhere, and the seams between the old concrete and the new concrete Burke had poured were " 'atrocious.' "

## B.

The prosecutor requested victim restitution of $26,023, comprised of $9,000 Edith paid Burke, $7,223 for Michael's labor, $4,800 for cement work, and $5,000 in materials.  The prosecutor argued Edith incurred these expenses to "obtain materials and labor to correct the work and repair the damage" Burke caused.  To support the restitution request, the prosecutor relied on Edith's testimony at the conditional examination, the probation report, and documentary evidence of Edith's expenses.

Defense counsel objected to the amounts for cement and materials, arguing a restitution award including these amounts were "outside the scope of the construction contract."  In response, the prosecutor noted Edith testified "the money that was expended" was to "repair" and "redo" the improper cement work and "to repair all of the damage she incurred as a result of [Burke's] defective work."  As the prosecutor explained, Edith testified Burke left "walls open, he did a lot of things under the house, took apart things that had to be replaced."  According to the prosecutor, the amount requested—$26,023—was necessary to make Edith "whole."

The court determined the prosecutor met its burden of proof and that Burke did not offer evidence contradicting the amount of the claimed loss.  It ordered Burke to pay $26,023 in victim restitution.  The court noted Burke had paid Edith $9,000, and that $17,023 was "still owing."

DISCUSSION

"[W]hen a defendant is convicted of a crime involving a victim who 'has suffered economic loss as a result of defendant's conduct' [citation], the court must require the defendant to pay full restitution directly to the victim . . . 'unless it finds compelling and extraordinary reasons for not doing so, and states those reasons on the record.' " (*People v. Giordano* (2007) 42 Cal.4th 644, 651–652.)  Restitution must "be 'based on the amount of loss claimed by the victim . . . or any other showing to the court.' " (*Id.* at p. 667, quoting § 1202.4, subd. (f).)  After the prosecution makes " 'a prima facie showing of [the victim's] loss, the burden shifts to the defendant to demonstrate that the amount of the loss is other than that claimed by the victim.' " (*People v. Millard* (2009) 175 Cal.App.4th 7, 30.)  "[W]e review the trial court's restitution order for abuse of discretion."   (*Giordano,* at p. 663.)  "No abuse of that discretion occurs as long as the determination of economic loss is reasonable, producing a nonarbitrary result." (*Id.* at p. 665.)

There was no abuse of discretion.  The court used a " 'a rational method' " to calculate an amount of restitution to make Edith " 'reasonably whole.' " (*People v. Petronella* (2013) 218 Cal.App.4th 945, 973.)  The record amply supports the amount of the restitution award.  Edith testified she paid Burke $9,000.  She also testified she paid Michael $7,223 to clean up the area under the house, to patch and paint a wall, and to remove and replace pipes; she paid another worker $4,800 for the cement work.  Edith also testified she spent at least $5,000 on materials.  Edith offered documentary evidence of amounts she spent on labor and materials.  The ceiling for the restitution award is not, as Burke seems to suggest, the $9,000 Edith paid him at the outset of the project.  Finally—and contrary to Burke's suggestion—the restitution award had a " 'factual nexus to the damage caused' " by Burke's

4

criminal acts because Edith testified she was forced to pay for labor and materials to fix the damage Burke caused.  (*People v. Hurtado* (2019) 35 Cal.App.5th 871, 879.)

## DISPOSITION

The restitution order is affirmed.

                                      _____

Jones, P. J.

WE CONCUR:


_____

Simons, J.


_____

Needham, J.


A157838